UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RHONDA A., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:21-cv-00173-TWP-MG |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the | ) |
| Social Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Rhonda A.[2] requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "SSA"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. For the following reasons, the Court **affirms, in part, and remands, in part** the decision of the Commissioner.

## I.   PROCEDURAL BACKGROUND

On April 26, 2018, Rhonda A. filed applications for DIB and SSI, alleging a disability onset date of February 13, 2018. (Filing No. 11-2 at 17.) Her applications were initially denied on September 13, 2018, (Filing No. 11-4 at 6; Filing No. 11-4 at 15), and upon reconsideration on April 29, 2019, (Filing No. 11-4 at 26; Filing No. 11-4 at 33). Administrative Law Judge Livia Morales (the "ALJ") conducted a hearing on June 11, 2020, at which Rhonda A., represented by

---

[1] On July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

[2] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

counsel, and a vocational expert ("VE") appeared and testified. (Filing No. 11-2 at 40-66.) The ALJ issued a decision on July 15, 2020, concluding that Rhonda A. was entitled to receive benefits based on a disability that began on July 22, 2019, the established disability onset date, but she was not disabled before that date. (Filing No. 11-2 at 13-31.) The Appeals Council denied review on November 23, 2020. (Filing No. 11-2 at 2.) On January 21, 2021, Rhonda A. timely filed this civil action, asking the Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to review the final decision of the Commissioner. (Filing No. 1.)

## II.  STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors. 20 C.F.R. § 404.1520(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits

[a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then her residual functional capacity will be assessed and used for the fourth and fifth steps. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v). Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite her mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1)[3]; Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996), 1996 WL 374184). At step four, if the claimant can perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given her RFC and considering her age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if she can perform any other work in the relevant economy. *Id*.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

---

[3] The Code of Federal Regulations contains separate, parallel sections concerning DIB and SSI, which are identical in most respects. Cases may reference the section pertaining to one type of benefits. *See Craft*, 539 F.3d at 676 (citing 20 C.F.R. § 404.1545(a)(1)). Generally, a verbatim section exists establishing the same legal point with the other type of benefit. *See, e.g.*, 20 C.F.R. § 416.945(a)(1). The Court will detail any applicable substantive differences but will not always reference the parallel section.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. For the purpose of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

### III.   FACTUAL BACKGROUND

When Rhonda A. filed her applications, she alleged that she could no longer work because of breast cancer, arthritis, depression, anxiety, colitis, and sciatica. (Filing No. 11-6 at 3.) She was 53 years old when her alleged disability began. (*See* Filing No. 11-5 at 2.) Rhonda A. had

taken one year of college but did not earn a college degree. (Filing No. 11-2 at 47.) She had worked as a customer service representative. (Filing No. 11-6 at 4.) The relevant evidence of record is amply set forth in the parties' briefs, as well as the ALJ's decision and need not be repeated here. Below are the facts relevant to the Court's disposition of this case.

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Rhonda A. was disabled, but not before July 22, 2019. (Filing No. 11-2 at 31.) At step one, the ALJ found that Rhonda A. had not engaged in substantial gainful activity[4] since February 13, 2018, the alleged onset date. (Filing No. 11-2 at 19.) At step two, the ALJ found that:

> [Rhonda A.] had the following severe impairments: status post lumpectomy in June 2015 and bilateral reduction due to Stage 1 breast cancer; status post lumpectomy and radiation therapy due to right breast mass in Feb. 2018; status post left oncoplastic reduction surgery; right upper extremity lymphedema; right hip osteoarthritis; lumbar spine disorder; major depressive disorder; [and] anxiety.

(Filing No. 11-2 at 20 (citations omitted).) At step three, the ALJ found that she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Filing No. 11-2 at 21.) After step three but before step four, the ALJ concluded:

> After careful consideration of the entire record, I find that since February 13, 2018, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can frequently reach overhead with the bilateral upper extremities; frequently handle finger and feel with the bilateral upper extremities; frequently climb ramps and stairs; never climb ladders, ropes or scaffolds; frequently balance, stoop, kneel, crouch and crawl; never work at unprotected heights; occasionally work around moving mechanical parts; occasionally operate a motor vehicle; perform simple, routine tasks; frequently interact with supervisors and coworkers; [and] occasionally interact with the public.

---

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

(Filing No. 11-2 at 23.)  At step four, the ALJ found, considering the VE's testimony and Rhonda A.'s RFC, that she could not perform any of her past relevant work as a customer service representative and shipping and receiving clerk.  (Filing No. 11-2 at 29.)  At step five, the ALJ found considering the VE's testimony and Rhonda A.'s age, education, work experience, and RFC that she could have performed other work with jobs existing in significant numbers in the national economy in representative occupations like a price marker, mail clerk, and garment sorter; but beginning with an age-category change on July 22, 2019, there were not jobs existing in significant numbers that she could have performed.  (Filing No. 11-2 at 30-31.)

## IV.   DISCUSSION

Rhonda A. makes two assertions, that: (1) the ALJ's application of SSR 16-3p when assessing her statements concerning her subjective symptoms was erroneous; she did not properly address the relevant evidence and provide a logical bridge from the record to her conclusions; (Filing No. 13 at 15-22); and (2) the ALJ failed to provide a function-by-function assessment of her RFC that explained how she could attend to full-time work with her moderate limitations of concentration, persistence, or maintaining pace; (Filing No. 13 at 23-29).  The Court will address the arguments in turn to the extent necessary to resolve the appeal.

**A.   Physical Limitations**

The ALJ found that during the period under review, Rhonda A.'s age category changed from an individual closely approaching advanced age on her alleged onset date to an individual of advanced age on the established disability date, July 22, 2019.  (Filing No. 11-2 at 29.)  By regulation, an individual closely approaching advanced age is between ages 50 and 54.  20 C.F.R. § 404.1563(d).  Advanced age is 55 or older.  20 C.F.R. § 404.1563(e).  The SSA considers that for an individual of "advanced age who can no longer perform vocationally relevant past work …

the limitations in vocational adaptability represented by functional restriction to light [exertional] work warrant a finding of disabled," because "[o]rdinarily, even a high school education or more which was completed in the remote past will have little positive impact on effecting a vocational adjustment . . . ."  20 C.F.R. § Pt. 404, Subpt. P, App. 2, 202.00(c).  Accordingly, the ALJ determined that disability was established based on application of the Medical-Vocational Guidelines when Rhonda A. attained advanced age, while also considering her education, work experience, and RFC.  ([Filing No. 11-2 at 29-31](#) (citing 20 C.F.R. § 404, Subpt. P, App. 2, Rule 202.14 ("not disabled" when closely approaching advanced age), *compared with id.*, Rule 202.06 ("disabled" at advanced aged)).)

Application of the Medical-Vocational Guidelines primarily considers a claimant's "exertional" capability that is "predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs . . . ."  *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 2, 200.00(d)-(e).  On appeal, Rhonda A.'s arguments pertain almost exclusively to the ALJ's assessment of her RFC resulting from her mental impairments.  The Court finds no significant argument developed by Rhonda A. that challenges the ALJ's assessment of her RFC based on her physical impairments, including her exertional capacity to perform a range of light work.  Undeveloped arguments are waived.  *See, e.g.*, *Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019).  Accordingly, the ALJ's RFC finding concerning Rhonda A.'s limitations from her physical impairments is **affirmed**.

B.     **Subjective Symptom Evaluation**

When evaluating a claimant's subjective statements about the intensity and persistence of her symptoms, the ALJ must often, as here, make a credibility determination concerning the limiting effects of those symptoms.  *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016).  Reviewing

courts "may disturb the ALJ's credibility finding only if it is 'patently wrong.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015)). Reviewing courts examine whether a credibility determination was reasoned and supported; only when an ALJ's decision "lacks any explanation or support . . . will [a court] declare it to be 'patently wrong.'" *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). If a fully favorable determination cannot be made based solely on the objective medical evidence, SSR 16-3p directs the ALJ to consider "all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms . . . ." SSR 16-3p (S.S.A Oct. 25, 2017), 2017 WL 5180304, at *6-8. This includes the regulatory factors relevant to a claimant's symptoms, like daily activities, the location, duration, frequency, and intensity of pain or other symptoms, factors that precipitate and aggravate the symptoms, the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; and treatment, other than medication, an individual receives or has received for relief of pain or other symptoms. *Id*. at *7-8; 20 C.F.R. § 404.1529(c)(3).

> Regarding Rhonda A.'s mental impairments, the ALJ explained that:
>
> [Rhonda A. testified] that she stopped working when she was hospitalized for depression and [she] continue[d] to have severe depression. She stated that she ha[d] mood swings on a daily basis and mostly ha[d] a feeling of giving up. She avoid[ed] calls, appointments and going out and her mind race[d] so fast that she [could not] control it. The claimant also reported periods where she d[id] not sleep for 3 days straight and other times when she sle[pt] for 3 days straight.

(Filing No. 11-2 at 24.) The ALJ concluded that Rhonda A.'s "medically determinable impairments could reasonably [have] be[en] expected to produce the above alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Filing No. 11-2 at 25.)

8

However, Rhonda A. has identified that several of the ALJ's rationales for discrediting her are problematic. The ALJ acknowledged that Rhonda A.'s alleged onset date in February 2018 coincided with a three-day hospitalization for long-standing depression of around 15 years that had worsened in the past two months, including symptoms of her not wanting to live, get out of bed, or go to work. (Filing No. 11-2 at 26.) But the ALJ considered that Rhonda A.'s mood improved at discharge, and her psychiatrist noted improvement with mental symptoms in May 2018, after a medication adjustment. *Id*. The ALJ also explained that Rhonda A. "had no further hospitalizations or inpatient treatment since early 2018." (Filing No. 11-2 at 27.) The Seventh Circuit has explained that hospitalizations are reserved for certain acute symptoms—like Rhonda A. being suicidal in early 2018—and the lack of further or ongoing hospitalizations does not necessarily indicate that a claimant is capable of gainful employment. *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015). Similarly, in *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011), the court explained that "[t]here can be a great distance between a patient who responds to treatment and one who is able to enter the workforce," particularly when treatment records continue show frequent ongoing disruptions of mood.

The ALJ also explained that "evidence that [Rhonda A.] was a new hire for various employers after the alleged onset date starting in the 2nd quarter of 2018 through to 2020 and collected unemployment detracts from her allegations of the inability to work." (Filing No. 11-2 at 27 (citation omitted).) The Seventh Circuit has explained that "a claimant's desire to work is not evidence that the claimant has embellished [her] limitations," and the collection of unemployment is not necessarily inconsistent with disability because a claimant may be hoping that ongoing medical treatment will restore her capacity to earn gainful employment. *Lambert v. Berryhill*, 896 F.3d 768, 778 (7th Cir. 2018). The court further explained:

9

> Finally, we note a more fundamental problem with the ALJ's reliance on [the claimant's] application for unemployment compensation to discount [her] credibility in seeking disability benefits. Under the Social Security Act, the line between disabled and nondisabled can be very difficult to chart accurately. And the Social Security system is designed to encourage everyone who can work to do so. [. . .] And a person who is not certain whether [she] will qualify for Social Security disability surely has, *and should have*, a strong incentive to keep looking for work and to pursue unemployment compensation as an interim source of income. An ALJ should not discount a claimant's credibility based on an application for unemployment compensation without taking these incentives and pressures into account.

*Id*. at 778-79 (emphasis in original). Similarly, in *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014), the court explained that "a claimant's dogged efforts to work beyond her physical capacity would seem to be highly relevant in deciding her credibility and determining whether she is trying to obtain government benefits by exaggerating her . . . symptoms." Here, the ALJ did not explicitly consider the facts of Rhonda A.'s case concerning her work attempts and collection of unemployment benefits. She fulfilled her obligation to receive unemployment benefits by not only seeking employment but attempting to work several jobs during the period under review. The ALJ did not explicitly consider the outcome of Rhonda A.'s several work attempts, the short duration of each work attempt that lasted only a couple of weeks or maybe a couple of months, and the reasons that the work attempts were not successful. (*See* Filing No. 11-2 at 47-51 (Rhonda A.'s relevant testimony).) For example, she tried working for the Salvation Army because she believed that the employer's experience with disabled people would make it a good fit, but she was "somewhat on suspension" for missing days because she could not "get out of bed." (Filing No. 11-2 at 48.) Rhonda A. also attempted two jobs that required lifting 50 pounds, but she testified that she could not perform them for that reason. (Filing No. 11-2 at 49-50.) Those jobs' lifting demands exceeded the ALJ's assessment of her lifting capability during the period under review.

10

She was not able to sustain work at any of these jobs, but she continued to try to work at new jobs. Her attempts to do so do not detract from her credibility.

The ALJ further explained that Rhonda A. adopted her sister's daughter, she had cared for her niece since at least her alleged onset date, and that consideration was among the "reports [that] diminish[ed] the persuasiveness of the claimant's allegations regarding her limitations." (Filing No. 11-2 at 27.) The Seventh Circuit has explained that necessary childcare is demanding, but "may impel her to heroic efforts," "or else [she] abandon [her niece] to foster care," and the caretaker has a "degree of flexibility" in the home to meet the child's needs that is not analogous to the rigid demands of the workplace. *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005). Rhonda A.'s adopted daughter was eight years old at the time of the hearing, and she had adopted her approximately five years earlier. (Filing No. 11-2 at 47.) The record shows that she had been her niece's legal guardian since she was five months old because her sister did not want to care for her, and she did not want to see the child placed in foster care. (Filing No. 11-7 at 297.) The ALJ did not ask Rhonda A. how she managed her childcare duties when she did not want to get out of bed or was otherwise incapacitated by depression. For example, when she was hospitalized for depression. Not only is the ALJ's rationale problematic, but she also did not adequately explore the facts relevant to her rationale, and she again did not explicitly consider the relevant record.

The Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (citations omitted). "The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected." *Id*. Rhonda A. was eventually diagnosed with bipolar II disorder. (Filing No. 11-9 at 68.) The Seventh Circuit has

11

also explained that when reaching a conclusion that the claimant's mental symptoms have improved with treatment, the ALJ is "not permitted to 'cherry-pick' from . . . mixed results to support a denial of benefits." *Scott*, 647 F.3d at 740 (citations omitted). To do so, "reveals an all-too-common misunderstanding of mental illness. The very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated." *Id*.

The ALJ fell into this common pitfall when evaluating Rhonda A.'s response to treatment for her mental impairments. For example, the ALJ explained that Rhonda A.'s "concentration levels were noted to be mildly impaired at a recent psychiatric exam," (Filing No. 11-2 at 28 (citation omitted)), and citing the same treatment visit, the ALJ also explained that her "nurse practitioner noted only mild impairment in the claimant's concentration," (Filing No. 11-2 at 23 (citation omitted)). However, during other visits with the same provider, Rhonda A.'s concentration was noted to be "moderately impaired." (Filing No. 11-9 at 70; Filing No. 11-9 at 76.) The ALJ noted that Rhonda A. "showed no evidence of personal hygiene neglect at the [physical] consultative examination." (Filing No. 11-2 at 23 (citation omitted).) Although, the consultative examiner's record is confusingly less clear, stating that she was "disheveled - no evidence of personal hygiene neglect." (Filing No. 11-7 at 338.) The ALJ explained that in May 2019, Rhonda A. "denied medication side effects." (Filing No. 11-2 at 27.) However, the ALJ did not mention that in May 2018, her primary care doctor's statement stated that she had "drowsiness" from her prescriptions for her mental impairments. (Filing No. 11-7 at 233.) On July 5, 2019, Rhonda A.'s treating nurse practitioner recorded that her side effects from her medications included "dizziness for the past week," and "[d]rowsiness." (Filing No. 11-9 at 79.)

More substantively, the ALJ focused on reports of improved anxiety. She explained:

12

> After a change in psychiatric medication, the claimant reported [at a visit in February 2019] that her anxiety was better. The claimant reported cutting back on her anxiety medications. In May 2019, she reported that her panic attacks were not as bad and she was trying to get out and do more. Notes indicate that the claimant felt her current medications had been very helpful.

(Filing No. 11-2 at 26-27 (citations omitted).) However, during the February 2019 visit, Rhonda A. also reported feeling "very angry," she was ruminating a lot, would get "stuck" worrying about things she had no control over, and she continued to struggle with a lack of motivation. (Filing No. 11-8 at 225.) On examination, her mood and affect were tense, irritable, depressed, angry, and intense. (Filing No. 11-8 at 225-26.) After her May 2019 treatment visit, on August 22, 2019, Rhonda A. reported that she was "still a raging lunatic," she reported that day was the first that she had showered in two weeks, her mood was irritable, down, and depressed, her appetite was decreased, she had lost pleasure in activities, she had obsessive racing thoughts, she was agitated, felt hopeless, and her anxiety was high. (Filing No. 11-9 at 76.) She had bags of mildewed laundry that she had not done for weeks in the trunk of her car, she seldom left the house, and most of the treatment session was spent counseling her about her perception that she was a failure. (Filing No. 11-9 at 73.) On examination, her mood was depressed and irritable, her affect was withdrawn and constricted, and she had passive suicidal ideations that she sometimes wished that she would not wake up. (Filing No. 11-9 at 74.) On September 23, 2019, she was "trying to get out and do more," but she reported a labile mood, sleep disturbance, and frequent irritability. (Filing No. 11-9 at 70.) On February 26, 2020, her treating nurse practitioner explained that Rhonda A. had made a big improvement compared with her previous reports that she was not bathing on a regular basis by her getting up, bathing, getting dressed, and making it to work nearly every weekday to attend to her part-time job. (Filing No. 11-9 at 56.) However, she personally downplayed the improvement that her provider noticed, and one of her treatment goals was to improve her

13

awareness of her "negative automatic thoughts/self talk and formulate more positive alternatives." *Id*. The ALJ largely ignored Rhonda A.'s ongoing issues with mood and her variable reports of waxing and waning symptoms.

The ALJ's RFC assessment is inherently intertwined with her credibility evaluation. *See e.g.*, *Outlaw v. Astrue*, 412 F. App'x 894, 897 (7th Cir. 2011). The Commissioner contends that substantial evidence supports the ALJ's evaluation of Rhonda A.'s mental impairments, in part, because an RFC finding is an assessment of "the most she can still do despite her limitations based on all relevant evidence." (Filing No. 14 at 15 (citing 20 C.F.R. § 404.1545(a).) By regulation, an RFC "is the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a). But the regulation also explains that whether considering mental or physical abilities, the assessment is a determination of the claimant's RFC "for work activity on a regular and continuing basis." *Id*. at 404.1545(b)-(c). The SSA's guidance explains:

> Ordinarily, RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*.

SSR 96-8p, (S.S.A. July 2, 1996), 1996 WL 374184, at *2 (emphasis in original; footnote omitted). The ruling clarifies the distinction between the most versus the least that the claimant can do:

> *RFC represents the most that an individual can do despite his or her limitations or restrictions*. At step 5 of the sequential evaluation process, RFC must not be expressed in terms of the lowest exertional level (e.g., "sedentary" or "light" when the individual can perform "medium" work) at which the medical-vocational rules would still direct a finding of "not disabled." This would concede lesser functional abilities than the individual actually possesses and would not reflect the *most* he or she can do based on the evidence in the case record, as directed by the regulations.

*Id*. at *4 (emphasis in original). In other words, an ALJ should not simply find that a claimant has an RFC for a range of sedentary work because an application of the Medical-Vocational Guidelines

14

would direct a finding of not disabled at that exertional level based on the other considerations including the claimant's age. If the claimant is capable of more rigorous exertional work, *i.e.*, light work, the ALJ's RFC finding should be for a range of light work. But an RFC assessment must still consider the claimant's ability to sustain full-time work on a regular and continuing basis. For example, if an individual can stand six hours out of an eight-hour workday every other day, but she cannot stand for even half the workday on the days in between, she is not capable of standing six hours out of an eight-hour workday on a regular and continuing basis. The Seventh Circuit has explained that "[a] person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days . . . ." *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008). "Suppose that half the time she is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job. That is likely to be the situation of a person who has bipolar disorder that responds erratically to treatment." *Id.* (citations omitted).

The Commissioner also contends that the ALJ's RFC finding is supported by the psychological consultants' assessments. (Filing No. 14 at 10-11.) The ALJ found that the opinion of the psychological consultative examiner, Paul Lysaker, Ph.D., was "persuasive." (Filing No. 11-2 at 28.) Dr. Lysaker explained in his medical source statement that "[o]verall[, Rhonda A.] responded appropriately in the interview, though she found the interview taxing due to her depressed mood. She is likely to [have been] able to interact with supervisors, colleagues and customers appropriately at some points but at others this may [have] prove[n] difficult due to depression." (Filing No. 11-7 at 346.) Dr. Lysaker's assessment was that Rhonda A.'s mood disorder may have interfered with her ability to sustain work-related activities that were otherwise within her capabilities on better days.

15

Accordingly, further consideration of the entire record relevant to an assessment of Rhonda A.'s mental capability to functioning on a sustained basis is necessary on remand.

### C. Other Arguments

To the extent that by Rhonda A. suggests—by stating that an improper subjective symptom evaluation "requires remand and/or reversal"—that a remand with instructions to award benefits is the appropriate relief, the Court does not agree. "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Briscoe ex rel. Taylor*, 425 F.3d at 355 (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)). Numerous questions remain on remand as to how the ALJ analyzed (or would analyze) relevant evidence that was not expressly considered in the decision. The Court's role on judicial review is not to act as a fact finder, and the Court cannot make credibility determinations. Accordingly, remand for further consideration of Rhonda A.'s statements concerning her subjective symptoms is the appropriate relief in this case.

Rhonda A.'s assertion that the ALJ's mental RFC finding failed to accommodate her moderate limitations of concentration, persistence, or maintaining pace is rendered moot by the ALJ's need to give further consideration to her credibility. As explained in the previous section of this Entry, her credibility evaluation is intertwined with her RFC finding. Similarly, the Court cannot ordinarily make an RFC finding on judicial review, and this is not the rare case that the ALJ's own factual determinations and the absence of any conflicting evidence in the record would compel a particular RFC finding and direct only one possible result on remand.

## V. CONCLUSION

For the reasons stated above, the final decision of the Commissioner is **AFFIRMED, in part, and REMANDED, in part. It is affirmed as to the ALJ's RFC finding concerning the limitations from Rhonda A.'s physical impairments. It is remanded for further consideration of Rhonda A.'s mental impairments, including further consideration of her RFC based on her mental impairments,** as authorized by Sentence Four of 42 U.S.C. § 405(g).

SO ORDERED.

Date: 9/23/2022

_____
Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Kirsten Elaine Wold
HANKEY LAW OFFICE
kwold@hankeylaw.com

Alison T. Schwartz
SOCIAL SECURITY ADMINISTRATION
alison.schwartz@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov